UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BLAGOJ CACOVSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:07-CV-329 RL |
| ) | |
| UNITED FARM FAMILY MUTUAL ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

**I. PROCEDURE**

On September 24, 2007, Farm Bureau submitted its first set of interrogatories and first requests for production of documents (Doc. No. 29-2). On December 17, 2007, Cacovski responded to Farm Bureau's first request for production of documents. In response to request number 9, Cacovski objected claiming that some of the information subject to the request was protected by the work product doctrine. However, Cacovski produced transcripts, or portions of transcripts, from three taped telephone conversations (Doc. No. 29-4 at 2-3). Cacovski's answer did not specifically indicate whether there were more taped conversations that he had not disclosed.

On January 7, 2008, Farm Bureau's counsel wrote to Cacovski's counsel and requested copies of the original recordings of the telephone conversations (Doc. No. 29-5 at 3). On February 6, 2008, Cacovski's counsel responded to counsel for Farm Bureau's letter and indicated he had three tapes. He indicated that he was willing to provide Farm Bureau with copies of the tapes, but conditioned their production on Farm Bureau paying for an outside agency to copy the tapes (Doc. No. 29-7 at 2). At that time, no claim was made regarding the

tapes or any of their content being privileged. On February 8, 2008, Farm Bureau's counsel responded to Cacovski's counsel's letter and indicated they would be willing to pay for the copy costs if the cost was not unreasonable, and counsel asked for an estimate of the cost (Doc. No. 29-8 at 1).

On March 6, 2008, Farm Bureau's counsel again wrote to Cacovski's counsel and requested a follow up as to the cost for copying the tapes (Doc. No. 29-9 at 2). On March 26, 2008, Farm Bureau's counsel again wrote to Cacovski's counsel. This letter essentially memorialized a telephone conversation between Farm Bureau's counsel and Cacovski's counsel. Apparently, Cacovski's counsel had provided an estimate for the cost of copying the tapes. When Farm Bureau's counsel questioned the excessiveness of the cost, Cacovski's counsel indicated that the tapes may contain more information than was disclosed in the original transcripts Cacovski gave Farm Bureau in December of 2007 (29-10 at 2). The letter does not indicate whether Cacovski's counsel claimed that portions of the tapes were privileged. The letter closed with counsel indicating it expected a follow up to the conversation once Cacovski's counsel learned whether the tapes contained more information than he originally believed.

On April 3, 2008, Farm Bureau's counsel emailed Cacovski's counsel and indicated that because she had not heard from counsel, she would be forced to file a motion to compel (Doc. 29-11). On that same day, Farm Bureau filed its motion to compel production of copies of the tapes, and Farm Bureau filed a separate motion for fees, costs, and sanctions associated with its motion.

On April 16, 2008, Cacovski sent Farm Bureau a second supplemental response to Farm Bureau's request for production of documents. For the first time since December of 2007,

Cacovski claimed that portions of the tapes were privileged (Doc. No. 34-4 at 2). Cacovski also submitted a privilege log that documented each conversation, in general, and what privilege applied.

On April 18, 2008, Cacovski filed a response to Farm Bureau's motion to compel and the motion for sanctions. Cacovski claims that he is unwilling to provide Farm Bureau with portions of the tapes because they are either protected by the work-product privilege or the physician-patient privilege. Furthermore, Cacovski claims he is willing and ready to provide Farm Bureau with tapes and has been willing to provide Farm Bureau with the tapes as soon as Farm Bureau pays for the copying costs.

## II.    ANALYSIS

Fed. R. Civ. P. 26(b)(1) permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party." Relevant information need not be admissible at trial so long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). For the purpose of discovery, relevancy will be construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Chavez v. Daimler Chrysler, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351(1978)).

This Court has broad discretion when deciding whether to compel discovery and may deny discovery to protect a party from oppression or undue burden. Fed. R. Civ. P. 26(c); Sattar v. Motorola, Inc., 138 F.3d 1164, 1171 (7th Cir. 1998) ("[D]istrict courts have broad discretion in matters related to discovery."); Gile v. United Airlines, Inc., 95 F.3d 492, 495-96 (7th Cir.

1996) ("The district court exercises significant discretion in ruling on a motion to compel."). In ruling on a motion to compel, "a district court should independently determine the proper course of discovery based upon the arguments of the parties." Gile, 95 F.3d at 496.

However, despite the liberal standards for discovery, a party may not be forced to produce discovery when a claim of privilege is appropriately raised, such as the work product privilege. The work product doctrine is codified in the Federal Rules under Fed. R. Civ. P. 26(b)(3). See A.O. Smith Corp. v. Lewis, Overbeck & Furman, 1991 WL 192200 at *1 (N.D. Ill. 1991) (indicating work-product doctrine stems from Hickman v. Taylor, 329 U.S. 495 (1947) and is codified in Fed. R. Civ. P. 26(b)(3)). Fed. R. Civ. P. 26(b)(3) states:

> . . . a party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the . . . materials by other means. . . . [T]he court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.[1]

Even though Cacovski has claimed the application of the work product doctrine, Farm Bureau argues that Cacovski should be forbidden from claiming its protection. Cacovski's counsel never clearly and specifically indicated in December of 2007 that there was more material on the tapes that was not disclosed. Counsel even had several opportunities to indicate to Farm Bureau's counsel that there were more conversations on the tapes that were being

---

[1] This Court notes that federal law governs the scope and application of the work product doctrine. The work product doctrine has been codified in the Federal Rules of Civil Procedure, and as a result, this Court applies federal case law regarding interpretation of this doctrine. See Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co., 2005 WL 3690565 at *5 (C.D. Ill. 2005). The attorney-client privilege, for comparison, remains a common law doctrine, and thus, F.R.E. 501 commands this Court to apply state law when jurisdiction is based solely on diversity. See Doe v. Oberweis Dairy, 2004 WL 1146712 at *2 (N.D. Ill. 2004).

withheld during the next few months.  But, it was not until March of 2008 after several conversations between opposing counsel that it became explicitly clear that there was other material not disclosed based on a claim of privilege, and it was not until April 16, 2008, after Farm Bureau had filed its motion to compel that Cacovski's counsel provided Farm Bureau with a supplemental disclosure and a privilege log.  Farm Bureau claims this behavior is sufficient to be considered a waiver of the privilege.

This Court agrees counsel should have known what discovery he had in his possession, especially because he broadly claimed some material was privileged in December of 2007.  Further, the failure of counsel to recognize specifically what discovery in his possession was privileged and to adequately notify opposing counsel for several months is not the type of proficiency during discovery contemplated by this Court and Fed. R. Civ. P. 26(e)(1)(A).  This Court will assume counsel supplemented his responses to Farm Bureau's request for production as soon as he learned the contents of the tapes, even if his own uncertainty lead to tardy supplementation of his disclosure.

Furthermore, while counsel was not as diligent as he could have been, he did appropriately preserve his claim of the work product privilege.  In December of 2007, Cacovski specifically objected to the relevant request for production by stating some of the materials were protected by the work product privilege.  Farm Bureau was on notice that there was likely more discovery that was not being produced, even though it did not learn specifically what the discovery was until much later.

However, even though Cacovski has preserved his claim of privilege, it does not mean that this dispute is ripe for this Court's review.  When a party withholds information pursuant to

5

a claim of privilege, they must generally provide a log of the documents or its functional equivalent.  Fed. R. Civ. P. 26(b)(5)(A); Petrovic v. City of Chi., 2007 WL 2410336 at *2 (N.D. Ill. 2007).  The privilege log enables the parties to assess the applicability of the privilege. Rittacca v. Abbot Lab.s, 203 F.R.D. 332, 336 (N.D. Ill. 2001).  It also allows this Court to analyze the applicability of the privilege.  In the present case, Cacovski provided a privilege log, but the log is inadequate.

This Court finds Petrovic v. City of Chicago, 2007 WL 2410336 at 2 (N.D. Ill. 2007) instructive regarding the contents of a privilege log.  A privilege log should contain: 1) the name and capacity of each individual from whom or to whom a document was sent; 2) the date of the document and attachments, 3) the type of document; 4) the Bates number if applicable; 5) the nature of the privilege asserted; and 6) a description of the subject matter in sufficient detail to determine if the document is privileged.  Several of these factors are deficient in Cacovski's log.

To determine if the tapes are "work product," this Court must be able to ascertain whether they were created in anticipation of litigation.  Abbott Laboratories v. Alpha Therapeutic Corp., 200 F.R.D. 401, 409 (N.D. Ill. 2001).  Furthermore, this Court must be able to ascertain whether the alleged work product is opinion or mental conclusion work product or ordinary work product.  Cacovski's log lists an "unknown date" for many of the taped conversations.  Without at least an approximate date, it is difficult for this Court to evaluate whether the tapes were created in anticipation of litigation.  More importantly, Cacovski does not list a description of the subject matter of the conversations.  This Court cannot determine whether the tapes were prepared in anticipation of litigation without an adequate description of the conversations or a description of the circumstances surrounding the conversations.  Also, this

6

Court cannot ascertain what type of work product Cacovski claims the tapes to be, opinion or ordinary work product. Finally, although not outlined in Petrovic, a short alliteration from counsel of why he believes the work product doctrine applies to each particular tape would also be helpful.[2]

Consequently, Farm Bureau's motion to compel as well as its motion for sanctions are **DENIED** [Doc. No. 29 & 32]. However, Cacovski is **ORDERED** to provide Farm Bureau with an amended privilege log consistent with this Court's order by **July 7, 2008**. If Farm Bureau still believes that some or all of the conversations are not legitimate work product, it may re-file its motion to compel. Cacovski will then have the burden of establishing that the tapes are legitimate work product and that Farm Bureau does not have a substantial need for the tapes. The parties are warned that if this Court can only resolve the question by performing an in-camera inspection, this Court may employ the services of a special master. If this Court is forced to utilize a special master, the Court may assess costs against the party who wrongfully seeks or limited the use of the challenged discovery. See Fed. R. Civ. P. 53(a)(3).

Furthermore, Cacovski is **ORDERED** to produce copies of the tapes to Farm Bureau for any and all conversations for which Cacovski has provided Farm Bureau with transcripts. While Farm Bureau had initially indicated it would pay for the copy costs, Cacovski's counsel shall bear the costs of copying and reproduction. First, there is a presumption that the responding party must bear the expense of complying with discovery requests as well. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978); Wiginton v. C.B. Richard Ellis, Inc., 229 F.R.D. 568,

---

[2] The same principles apply to Cacovski's claims of the physician-patient privilege. Cacovski must amend his privilege log with regards to this privilege as well for this Court to assess it applicability.

571-72 (N.D. Ill. 2004); Hagemeyer N.Am. Inc. v. Gateway Data Sciences Corp., 222 F.R.D. 594, 600 (E.D. Wis. 2004).  More importantly, Cacovski's counsel's failure to diligently and timely supplement its discovery and clearly indicate to Farm Bureau that counsel had not provided some of the tapes because counsel believed they were valid work product warrants this result.  If Cacovski must provide copies of the tapes in any future motions before this Court, he shall bear those costs as well.  For purposes of clarity, Cacovski's counsel, not Cacovski himself, shall bear the costs because the errors in not knowing the contents of the materials or failure to disclose to opposing counsel that some material were withheld lies with counsel.

### III.    ANCILLARY MATTERS

On April 18, 2008, Cacovski submitted a motion for a protective order.  The motion looks more like an agreed protective order submitted for this Court's approval rather than an argument pursuant to Fed. R. Civ. P. 26(c) that certain information should be sealed pursuant to certain conditions.  This Court is the primary representative of the public interest and has a duty to review any request to deprive the public of access to documents.  Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir.1999).  As a consequence, this Court is forced to make, at least, a preliminary analysis and articulate its reasoning for limiting the public's access to the records of any action.  In re Associated Press, 162 F.3d 503, 509 (7th Cir. 1998); Grove Fresh Distributors, Inc. v. Everfresh Juice Co., 24 F.3d 893, 898-99 (7th Cir. 1994). Cacovski claims that good cause exists because disclosure of personal information of certain people "would significantly impact the privacy concerns of employees."  That statement is vague and insufficient to warrant sealing the materials from the public's eye.  If Cacovski seeks to unilaterally seal information in this Court, he must explain why and how it impacts

8

privacy concerns and what privacy concerns are at issue.  As it stands, Cacovski does not adequately articulate "good cause" as required pursuant to Fed. R. Civ. P. 26(c).

Furthermore, while Cacovski has complied with Fed. R. Civ. P. 26(c) and Local Rule 37.1 to resolve the discovery dispute with Farm Bureau before seeking Court action, it appears that the parties could reach a resolution on any disagreement regarding the protective order with further consultation with each other.  Indeed, Farm Bureau even indicates confusion and surprise regarding Cacovski's filing of the motion as it believed the parties were still negotiating the terms of the protective order.  Consequently, Cacovski's motion for a protective order is **DENIED WITHOUT PREJUDICE** [Doc. No. 35].  The parties are **ORDERED** to meaningfully confer to attempt to resolve all disputes regarding the protective order.  If the parties cannot reach an agreement on the protective order, than Cacovski may re-submit his motion, but he must provide an adequate analysis of why certain materials should only be sealed from public view.

**IV.   CONCLUSION**

For the reasons stated, Farm Bureau's motion to compel and its motion for sanctions is **DENIED** [Doc. No.s 29 & 32], and Cacovski's motion for a protective order is **DENIED WITHOUT PREJUDICE** [Doc. No. 35].

**SO ORDERED.**

Dated this 12th Day of June, 2008.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge